UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,                        Case No. 0:06-CV-2382 (PJS/RLE)

                   Plaintiff,

v.                                               MEMORANDUM OPINION
                                                      AND ORDER
JOHN G. HOKLIN, BARBARA U.
HOKLIN, STATE OF MINNESOTA, and
COUNTRYWIDE FUNDING
CORPORATION,

                   Defendants.

---

LaQuita Taylor-Phillips, UNITED STATES DEPARTMENT OF JUSTICE, TAX DIVISION, for plaintiff.

John G. Hoklin and Barbara U. Hoklin, plaintiffs pro se.

Eric D. Cook, WILFORD & GESKE, PA, for defendant Countrywide Funding Corporation.

Defendants John and Barbara Hoklin did not pay their federal income taxes in full for tax years 1992 through 1997. In October 2001, they filed for bankruptcy protection, and their debts — including their back taxes — were discharged in January 2002. But the bankruptcy discharge released the Hoklins only from personal liability; it did not affect federal tax liens on their home. The government now sues to foreclose on those liens.[1]

---

[1]Defendant Countrywide Funding Corporation has its own lien — a mortgage — on the Hoklins' home, and Countrywide and the government have stipulated that Countrywide's lien is superior to the government's. Stipulation [Docket No. 24]. Accordingly, if the Court orders the house to be sold, Countrywide will be paid first and the government will be paid second. Defendant the State of Minnesota has not appeared and has been found to be in default. Clerk's Entry of Default [Docket No. 29].

The government moved for summary judgment, and the Court referred the motion to Chief Magistrate Judge Raymond L. Erickson pursuant to 28 U.S.C. § 636(b)(1)(B). Judge Erickson issued a Report and Recommendation ("R&R") in which he recommends denying the government's motion in its entirety. The government objects.

The Court has reviewed de novo those portions of the R&R to which the government has objected, as required by 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). The Court sustains in part the government's objection and grants partial summary judgment.

## I.  TAX LAWS AND REGULATIONS

Before turning to the facts of this case, the Court first sets out the relevant laws and regulations.[2] In this action to foreclose on tax liens, the key event on which the government's case turns is the "assessment" by the IRS of taxes against the Hoklins. Such an "assessment" is a precondition for a valid tax lien.

Sections 6321 and 6322 of Title 26 of the United States Code work together in addressing the subject of tax liens. Under § 6321, a tax lien arises by operation of law if "any person liable to pay any tax neglects or refuses to pay the same after demand," and the lien amount equals the amount of unpaid taxes plus "any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto . . . ." 26 U.S.C. § 6321. The lien encumbers "all property and rights to property, whether real or personal, belonging to" the taxpayer. *Id.* Under § 6322, a tax lien "shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a

---

[2]The Court's summary of the tax laws in this section is not intended to be comprehensive, and the Court deliberately skips over exceptions and fine points that are not germane to this case.

judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time."[3]  26 U.S.C. § 6322.

Under §§ 6321 and 6322, then, if the government has demanded and assessed taxes, the tax lien arises automatically upon assessment.  Significantly, the government need not record the lien to enforce it against the taxpayer.  *See* Internal Revenue Manual ("IRM") § 5.17.2.2.1 (Dec. 14, 2007) ("The lien is effective from the date the Government assesses the tax . . . . The Service is not required to file a NFTL [i.e., notice of federal tax lien] in order for the tax lien to attach."), *available at* http://www.irs.gov/irm/part5/ch17s02.html.  But if the government wants its lien to have priority against the claims of third parties, the government must record a notice of the lien with the appropriate state agency.  IRM § 5.17.2.3.1 ("The filing of a NFTL is not a step required to give rise to or to perfect the lien against the taxpayer.  The act of filing protects the Government's right of priority as against certain third parties, typically a purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor."); 26 U.S.C. § 6323(a), (f).  The notice of lien expires in roughly ten years unless it is refiled.  IRM § 5.17.2.3.3; 26 U.S.C. § 6323(g); 26 C.F.R. § 301.6323(g)-1.

Because the government's notice of lien operates only with respect to third parties, and not with respect to the taxpayer, whether that notice expires or is renewed is irrelevant to the validity of the lien against the taxpayer.  But the lien does not endure in perpetuity; rather, under § 6322, the lien can "become[] unenforceable by reason of lapse of time."  26 U.S.C. § 6322.

---

[3]All statutory sections referred to in the text are found in Title 26 of the United States Code.

Section 6322 does not specify *when* a tax lien becomes unenforceable "by reason of lapse of time."  Instead, the applicable time limits are found in §§ 6502 and 6503.[4]  Section § 6502 provides that, as a general rule, proceedings for collecting unpaid taxes must be brought "within 10 years after the assessment of the tax . . . ."  26 U.S.C. § 6502(a)(1); *see also United States v. Dawes*, 161 Fed. Appx. 742, 746-47 (10th Cir. 2005) (applying § 6502 in action to foreclose tax liens).  Section 6503 further provides that this ten-year period is suspended under various circumstances, such as when court proceedings prevent the government from collecting the unpaid taxes.  26 U.S.C. § 6503(a)(1).  If a taxpayer files for bankruptcy, § 6503(h) suspends the collection period while the bankruptcy case prevents collection activities and for the following six months.  26 U.S.C. § 6503(h)(2).

To sum up, a tax lien is valid only if two things are true:  (1) the lien has arisen because an "assessment" has been made; and (2) the collection period has not expired — that is, the lien has not "become[] unenforceable by reason of time."  26 U.S.C. § 6322.  Because the collection period's expiration date follows from the assessment date, pinpointing the assessment date is essential.

Roughly speaking, there are two types of assessments: "deficiencies" and what might be called "self-assessments."  When a taxpayer files a return that shows how much he owes in taxes, the amount shown on the return will be assessed by the government automatically under

---

[4]Section 6501 also imposes time limits on tax collection, but only indirectly, by limiting the period for making the underlying assessments.  Generally, taxes must "be *assessed* within 3 years" after a tax return is filed.  26 U.S.C. § 6501(a) (emphasis added).  But § 6501 does not limit the duration of a *lien*, because a lien only arises *after* an assessment is made.  If the government fails to assess a tax liability within three years as required by § 6501, a tax lien cannot arise in the first place.

§ 6201(a)(1).  This can be called a "self-assessment" because it reflects the taxpayer's own assessment of how much he owes.

Deficiencies are different.  A "deficiency," as defined in § 6211, is the amount of taxes that the government contends a taxpayer owes *beyond* the amount that he reported as owing on his return.[5]  26 U.S.C. § 6211(a).  Deficiencies are not assessed automatically.  Rather, § 6213 forbids the government from assessing a deficiency until the taxpayer has been mailed a formal notice of the deficiency.  26 U.S.C. § 6213(a).  Once the government mails the notice, the taxpayer has ninety days to file a petition in the United States Tax Court challenging the deficiency.  *Id.*  If the taxpayer does not file a timely petition, then once the ninety-day post-notice period has expired, the government can assess the deficiency.  26 U.S.C. § 6213(c).  If the taxpayer does file a petition, then the deficiency cannot be assessed until the Tax Court proceedings conclude.  26 U.S.C. § 6213(a).

A taxpayer can, however, waive the notice requirements associated with deficiencies.  26 U.S.C.§ 6213(d).  Those requirements can be waived only by "a signed notice in writing filed with the Secretary . . . ."  *Id.*  One event that can lead to a taxpayer's waiver of notice requirements, and thus to the immediate assessment of a deficiency, is a "field examination" by the IRS (i.e., an audit).  If the government conducts an in-person audit of a taxpayer's records and determines that taxes are owing, the government will ask the taxpayer to agree to the

---

[5]Simplified and translated into mathematical terms, § 6211(a) provides:

$$\text{Deficiency} \;=\; \begin{matrix}\text{Tax imposed}\\\text{by IRS}\end{matrix} \;-\; \left[\; \begin{matrix}\text{(Amount}\\\text{shown on}\\\text{return)}\end{matrix} \;+\; \begin{matrix}\text{(Other amounts}\\\text{previously}\\\text{assessed)}\end{matrix} \;-\; \text{Rebates} \;\right]$$

determination. 26 C.F.R. § 601.105(b)(4).  If the taxpayer *does* agree, "the agreement is evidenced by a waiver by the taxpayer of restrictions on assessment and collection of the deficiency, or an acceptance of a proposed overassessment." *Id.*

Basically, then, there are three times that an assessment arises: (1) when a taxpayer files a return showing taxes owing (the self-assessment); (2) after the government first determines that a deficiency exists, then sends a notice of deficiency to the taxpayer, and the taxpayer then either fails to challenge the deficiency or loses such a challenge; or (3) after the government determines that a deficiency exists and the taxpayer then executes a signed waiver of the otherwise-applicable notice requirements.

As noted above, when taxes are assessed, a tax lien arises automatically in favor of the government.  If the collection period has not expired, the government may, under § 7403, enforce the lien through a civil suit in federal district court.  26 U.S.C. § 7403.  This action brought against the Hoklins is such a suit.

## II.  DISCUSSION

### A.  *Standard of Review*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for either party.  *Ohio Cas. Ins. Co. v. Union Pac. R.R.*, 469 F.3d 1158, 1162 (8th Cir.

2006).  In considering a motion for summary judgment, a court "must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party."  *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir. 2004).

### B.  The Asserted Tax Liens

The government seeks to foreclose tax liens that it contends arose when the Hoklins failed to pay in full their taxes for tax years 1992 through 1997.  The government has provided only two types of evidence to support its summary-judgment motion:  printouts of information in the IRS's computer system and admissions from the Hoklins.[6]  Gov't Exs. 1-14 [Docket No. 36].  Unfortunately, though, the government has not offered any affidavits or testimony explaining the IRS printouts.

For each tax year, the government has provided two different IRS printouts.  The first is titled "Certificate of Assessments, Payments, and Other Specified Matters" (or "Certificate of Assessments" for short) and is IRS Form 4340.  Gov't Exs. 1-6.  The second is a "transcript of account for Form 1040" and seems to be a computerized record of what appeared on a given year's Form 1040, as well as a record of payments and charges related to that tax year.  Gov't Exs. 7-12.

Judge Erickson recommended denying summary judgment because he found that the government failed to establish that it had lawfully made the tax assessments underlying the liens

---

[6]The government has also provided documents related to the its filing of notices of tax lien with state agencies.  Gov't Exs. 15-24.  As noted above, however, these notices operate only with respect to third parties; they are irrelevant to the government's ability to enforce its tax liens against the Hoklins.

it seeks to foreclose.  He considered two possibilities:  (1) that the Hoklins' unpaid taxes were deficiencies; and (2) that the Hoklins' unpaid taxes had been self-reported.  Judge Erickson found that *if* the unpaid taxes were deficiencies, the government was not entitled to summary judgment because it did not establish that it sent the required notices of deficiencies.  R&R at 12-18.  The government does not contest this point.  Obj. at 4-5.

Judge Erickson also considered whether the Certificates of Assessment demonstrated that the Hoklins had made a self-assessment by reporting the amount of their unpaid taxes on their returns.  R&R at 18-19.  He concluded that the Certificates of Assessment were not sufficient to establish that the Hoklins had self-reported their unpaid taxes.  *Id.*  It is not clear why Judge Erickson discussed only the Certificates of Assessment and not the Form 1040 transcripts of account.  It should be noted, though, that the government's briefing before Judge Erickson, like its briefing before this Court, was murky at best.[7]

In objecting to the R&R, the government first argues that this Court should reject the R&R and grant summary judgment because the Hoklins failed to oppose its motion.  *Id.* at 2-4. The government would be correct if the Hoklins had the burden of proof.  Summary judgment may be granted against the nonmoving party when — for whatever reason — that party "has failed to make a sufficient showing on an essential element of her case *with respect to which she has the burden of proof*."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis added).

---

[7]The government has been neither clear nor thorough in describing the law and facts in this case, forcing this Court to have to devote a great deal of time to trying to educate itself about the tax laws and figure out the meaning of various exhibits.  The government must bear in mind that the tax laws are extremely complex, particularly to the uninitiated, which includes most federal judges.  The government must take care to explain the tax laws clearly and to provide a full and adequately explained factual record, especially when, as here, the taxpayers are representing themselves.

But the Hoklins do *not* have the burden of proof in this proceeding; they could sit mute at trial, submitting no evidence and making no argument, and still prevail.  If the Hoklins can win at trial without saying anything, obviously they can defeat a summary judgment motion without saying anything.  To receive summary judgment, the government must establish that it is "entitled to judgment as a matter of law," Fed. R. Civ. P. 56(b), and, as the party with the burden of proof, the government cannot establish that it is entitled to judgment by simply pointing out that the party without the burden of proof has submitted no evidence or argument.

The government also argues that it was not required to send notices of deficiency and that Judge Erickson erred in finding otherwise.  Obj. at 4-6.  Specifically, the government contends that because the Hoklins self-reported certain amounts on their tax returns and agreed to certain other amounts, notices of deficiency were not required as a prerequisite to assessment.  *Id.* at 5.  The Court agrees in part with the government.  Because different tax years raise different issues — including some important issues that the government did not address in its moving papers or its objection — the Court discusses tax years 1992, 1993, and 1994 separately, and tax years 1995 through 1997 as a group.

### 1.   Tax Year 1992

The IRS Certificate of Assessments for tax year 1992 shows an amount of $6,493 labeled with the words "Return Filed & Tax Assessed."[8]  Gov't Ex. 1 at 2.  Two dates are associated with this entry.  In the left margin, in the column labeled "Date," the date August 18, 1993 appears.  In the right margin, in the column labeled "Assessment Date," the date September 20,

---

[8]The phrase "Return Filed & Tax Assessed" is in all capital letters in the Certificate of Assessments.  Throughout this order, to improve legibility, the Court uses upper- and lower-case letters for phrases that are in all capital letters in original documents.

1993 appears.  The Court agrees with Judge Erickson that this entry, by itself, does not clearly

show that the Hoklins self-reported on their Form 1040 that they owed $6,493.  R&R at 18-19.

The transcript of account for tax year 1992, however, clarifies matters.  (Again, Judge

Erickson did not discuss this, or any other, transcript of account.)  That transcript, like the

Certificate of Assessments, shows an amount of $6,493, but the amount is labeled "Tax *Per*

*Return*."  Gov't Ex. 7 at 2 (emphasis added).  The transcript identifies August 18, 1993 as the

"*Return* Due Date or *Return* Received Date (Whichever is Later)" and September 20, 1993 as the

"Processing Date."  *Id.* (emphasis added).  The Court finds that a reasonable jury would have to

conclude, based on the Certificate of Assessments and the transcript of account taken together,

that the Hoklins self-reported $6,493 in taxes owing on their 1992 return.  The government was

therefore not required to send a notice of deficiency before assessing this amount, and a lien

arose on September 20, 1993, when the return was processed and the taxes were assessed.

This is not the end of the matter, however, because the government's evidence —

specifically, the transcript of account — establishes that the Hoklins paid this amount in full,

plus associated interest and penalties, by May 22, 1995.[9]  *Id.* at 2-3.  The $6,493 on the Hoklins'

return therefore cannot be the basis for the tax lien that the government now seeks to foreclose.

Instead, the basis of the government's lien for tax year 1992 is an amount of *additional*

taxes ostensibly assessed by the government in May 1995 after the IRS audited the Hoklins.  The

government glossed over this important detail in its complaint and in the summary-judgment

---

[9]The Hoklins wrote "this is correct" in response to the government's request for an admission that they "failed to pay in full the $6,493 in federal income taxes assessed against [them] for the 1992 year."  Gov't Ex. 14 at 2.  But the government's documentary evidence establishes conclusively that the Hoklins *did* pay this amount in full.  Gov't Ex. 7 at 2-3.

brief it submitted to Judge Erickson.  In both, the government asserted that it assessed $6,493 in

taxes for tax year 1992 and that the Hoklins still owed taxes for that year, but the government

failed to indicate that the balance owing from 1992 relates not to the original $6,493 but to a

later ostensible assessment.  *See* Compl. ¶ 8; Br. Supp. U.S. Mot. for S.J. ("Gov't SJ Mem.")

¶¶ 1-2 [Docket No. 36].  This is a crucial distinction, and the government should have brought it

to Judge Erickson's attention.

  Only in its objection to the R&R did the government clarify that it is trying to foreclose a

lien based on its purported assessment in 1995 of additional taxes for 1992.  Obj. at 5-6.  The

government, without citing any law, says that the IRS was not required to issue a notice of

deficiency with respect to the additional amount because it was "an agreed audit deficiency . . .

."  Obj. at 6.

  It is somewhat unclear from the Certificate of Assessments for 1992 exactly what the IRS

did in 1995.  There is a transaction on the form labeled a "Quick Assessment," in the amount of

$6,281.  Gov't Ex. 1 at 4.  There is no date in the "Date" column to the immediate left of the

entry for this "Quick Assessment" transaction, but in the "Assessment Date" column associated

with the transaction, the date April 18, 1995 appears.  *Id.*  On the same page, there is a

transaction labeled "Additional tax assessed by examination[;] agreed audit deficiency prior to

30 or 60 day letter," but the corresponding transaction amount is $0, the date in the "Assessment

Date" column is May 22, 1995, and there is no date in the "Date" column to the left of the entry.

*Id.*

  The related entries in the transcript of account for 1992 are consistent and equally

unhelpful.  An entry that reads "Additional tax assessed by examination" bears the date May 22,

1995 and an amount of $0.  Gov't Ex. 7 at 3.  Another entry that reads "Quick assessment" bears the date April 18, 1995 and an amount of $6,281.  *Id.*

The government, in its objection to the R&R, says that these additional taxes were assessed on May 22, 1995.  Obj. at 6.  If so, why is the "Quick Assessment" of the amount dated April 18, 1995 on both the Certificate of Assessments and the transcript of account?  The government has offered no competent evidence about how to interpret these documents.

More importantly, the government has offered no evidence that it complied with § 6213(d) and secured a written waiver from the Hoklins of the otherwise-applicable requirement that the government send them a notice of deficiency with respect to the additional $6,281 in taxes ostensibly assessed on May 22, 1995.  The only evidence related to this requirement is the phrase on the Certificate of Assessments, "Additional tax assessed by examination[;] agreed audit deficiency prior to 30 or 60 day letter."  Gov't Ex. 1 at 4.  This phrase does not establish beyond dispute that the Hoklins waived, in writing, their right to receive a notice of deficiency.

Under IRS regulations, if a taxpayer agrees with the results of an audit, "the examiner will invite the taxpayer to execute either Form 870 or another appropriate agreement form. . . . If the agreed case involves income . . . taxes, the agreement is evidenced by a waiver by the taxpayer of restrictions on assessment and collection of the deficiency, or an acceptance of a proposed overassessment."  26 C.F.R. § 601.105(b)(4).  Despite the regulatory and statutory requirement that the IRS secure a written waiver, no such waiver has been provided by the government to support its motion.

Finally, even if the Hoklins did execute a written waiver with respect to the $6,281 in taxes imposed in 1995, resulting in the assessment of those taxes at that time, the government has failed to establish that the lien for those taxes has not "become[] unenforceable by reason of time." 26 U.S.C. § 6322.

The government filed this suit on June 14, 2006. If the government assessed the additional taxes for tax year 1992 on May 22, 1995, then under § 6502, the ten-year period for collecting those taxes expired on May 22, 2005, unless that period was suspended under § 6503. 26 U.S.C. §§ 6502-03. The period was necessarily suspended during the Hoklins' bankruptcy and for the following six months under § 6503(h), but the bankruptcy case itself lasted only five months. *See In re Hoklin*, No. 01-44519, Docket Report (Bankr. D. Minn.) (petition filed Oct. 17, 2001; case closed February 21, 2002). By the Court's calculations, the bankruptcy resulted in a suspension of 308 days, and the government's collection period therefore expired on March 26, 2006, roughly two and a half months before this suit was filed. The government has not even attempted to establish that the collection period has not expired under § 6502.[10]

### 2. Tax Year 1993

For tax year 1993, the Certificate of Assessments together with the transcript of account establish that the Hoklins self-reported that they owed $9,078 in taxes on their Form 1040. Gov't Exs. 2, 8. The records also establish, however, that — unlike with respect to their 1992 taxes — the Hoklins did not pay these taxes in full. Instead, based on the transcript of account, it

---

[10]Judge Erickson understood the government to be contending that the collection period was extended when the government refiled its notices of federal tax liens with the state. R&R at 4. As explained above, however, those notices affect only the validity of a tax lien with respect to third parties. *See* IRM § 5.17.2.3.1. Refiling a notice of tax lien thus does not extend the ten-year collection period, which can be extended only in accordance with § 6503.

appears that they still owed $7,685.40 toward this original amount (plus associated penalties and interest). Gov't Ex. 8. Because the government was not required to send a notice of deficiency with respect to these taxes, they were assessed on September 26, 1994, when the IRS processed the Hoklins' return, and a tax lien for this amount arose then.

The government is also trying to collect additional taxes for tax year 1993. When the IRS audited the Hoklins' returns in 1995, it imposed additional taxes for both tax year 1992 (as discussed above) and tax year 1993. For tax year 1993, the government determined that the Hoklins owed an additional $5,655 in taxes. Gov't Ex. 2 at 3; Gov't Ex. 8 at 3.

The facts and legal issues related to this ostensible assessment of additional taxes are identical to the facts and legal issues discussed above in connection with the assessment for tax year 1992 made after the audit in 1995. For one thing, the government failed to expressly identify that its claim was based on this assessment until it objected to the R&R. More importantly, the government has not established that the Hoklins executed a written waiver of their right to receive a notice of deficiency with respect to these additional taxes.

Further, the government has not established that the collection period with respect to tax year 1993 has not expired under § 6502. It is quite probable that, with respect to the $7,685.40 balance remaining from the Hoklins' self-reported taxes, the collection period *has* expired, rendering the associated lien unenforceable. The original tax amount was assessed on September 26, 1994, and the collection period would thus have expired on September 26, 2004. To collect these taxes in this suit by foreclosing on its tax lien, the government would have to establish that the ten-year collection period was suspended for roughly eighteen months. No evidence of such a lengthy suspension appears in the record.

With respect to the additional $5,655 in taxes imposed in May 1995, it is also possible that the collection period for the government's lien — if a lien arose — has expired.  As explained above in connection with tax year 1992, to foreclose on a lien for the additional taxes assessed in May 1995, the government would need to establish both that the taxes were properly assessed and that the ten-year collection period was suspended for a little over a year.  It has established neither of those things.

### 3.  Tax Year 1994.

For tax year 1994, the Certificate of Assessments together with the transcript of account establish that the Hoklins self-reported that they owed $14,952 in taxes on their Form 1040.  Gov't Exs. 3, 9.  The government assessed this amount when it processed the Hoklins' return on August 28, 1995.  Gov't Ex. 9 at 2.

The government was not required to file a notice of deficiency with respect to this amount.  Further, the undisputed facts establish that the ten-year collection period did not expire before this suit was filed.  Under § 6503(h), the collection period was suspended at least from October 17, 2001 (when the Hoklins filed their bankruptcy petition) through August 21, 2002 (six months after the case was closed), for a total of 308 days.  The ten-year collection period would have ended on August 28, 2005, but because it was suspended, the period ended 308 days later, on July 2, 2006.  The government filed its complaint in this case roughly two weeks earlier, on June 14, 2006.

The government is therefore entitled to foreclose on its lien with respect to unpaid taxes, plus interest and penalties, for tax year 1994.

### 4.  Tax Years 1995 Through 1997

Tax year 1995 is similar to tax year 1994. The government's evidence establishes that the Hoklins self-reported that they owed $13,319 in taxes for tax year 1995 and that the government assessed this amount on April 15, 1996. Gov't Exs. 4, 10. Accordingly, no notice of deficiency was required for this year. Further, although the ten-year collection period would have expired on April 15, 1996, the period was suspended because of the Hoklins' bankruptcy case and thus had not expired when this suit was filed. The government is therefore entitled to foreclose on its lien with respect to unpaid taxes, plus interest and penalties, for tax year 1995.

For tax year 1996, the government's evidence establishes that the Hoklins self-reported that they owed $19,014 in taxes for the year and that the government assessed this amount on November 24, 1997. Gov't Exs. 5, 11. No notice of deficiency was required for this year, and this suit was filed before the ten-year collection period expired. The government is therefore entitled to foreclose on its lien with respect to unpaid taxes, plus interest and penalties, for tax year 1996.

For tax year 1997, the government's evidence establishes that the Hoklins self-reported that they owed $18,672 in taxes for the year and that the government assessed this amount on June 1, 1998. Gov't Exs. 6, 12. No notice of deficiency was required for this year, and this suit was filed before the ten-year collection period expired. The government is therefore entitled to foreclose on its lien with respect to unpaid taxes, plus interest and penalties, for tax year 1997.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, the Court SUSTAINS IN PART the government's objection [Docket No. 48] and DECLINES TO ADOPT

Judge Erickson's Report and Recommendation [Docket No. 47].  Accordingly, IT IS HEREBY

ORDERED THAT:

1.      The motion of the United States for summary judgment [Docket No. 34] is

GRANTED IN PART as follows:

      a.      The government has valid tax liens against the property of defendants

John G. Hoklin and Barbara U. Hoklin with respect to unpaid taxes, plus

interest and penalties, for tax years 1994, 1995, 1996, and 1997.

      b.      The government is entitled to foreclose on those liens against the Hoklins'

real property at 5014 Vine Hill Road, Excelsior, Minnesota 55331, which

is legally described as follows:  Lot 7, Block 1, Forest Hill Farm,

according to the recorded plat thereof, and situated in Hennepin County,

Minnesota.

2.      The motion of the United States for summary judgment [Docket No. 34] is

DENIED in all other respects.

Dated:  July  2 , 2008                          s/Patrick J. Schiltz
                                                  Patrick J. Schiltz
                                                United States District Judge